## FIRST NAT. BANK OF ARCADIA v. ARCADIA BONDED WAREHOUSE CO., Inc.

### DAVIS v. SAME.

### No. 5113.

Court of Appeal of Louisiana. Second Circuit.

Dec. 13, 1935.

Bertram F. Barnette, of Arcadia, for appellant.

P. E. Brown, of Arcadia, for appellee.

DREW, Judge.

The above-styled two cases were consolidated for trial, and it was agreed by

counsel that in case of judgment for plaintiffs, there should be only one judgment against the defendant, as the suits arose out of the same facts and over the same property.

According to the allegations of the petitions in both suits, the First National Bank of Arcadia first filed suit in which it claimed a lien and privilege on the crops raised on the Bert Davis place during the crop season of 1932. The bank supported its claim by introducing a crop lien, recorded in book 20, page 292, of the records of Bienville parish, and in due time a judgment was rendered by the court recognizing the bank's lien and privilege, which judgment is recorded in book 40, page 212, of the mortgage records. Its writ of sequestration was sustained, and the returns of the sheriff show that this officer seized the property in question, particularly the five bales of cotton in the Arcadia Bonded Warehouse Company's warehouse. Later, on October 11, 1932, Bert Davis, the other plaintiff herein, filed suit alleging ownership of the cotton; that same had been stolen from his place; and asking for a writ of sequestration.

The petitions here set forth that he obtained a judgment on November 29, 1932, and on a later date he obtained a writ of possession, sending him in possession of the five bales of cotton. The petitions set forth that these proceedings were made known to the defendant warehouse company, the proceedings being shown to the regular officers of the company and its employees, who knew the cotton had been stolen from the Davis place, and that demand had been made on the employees of defendant company to deliver the cotton to Bert Davis.

The petitions further set forth that the officers and employees of defendant company acknowledged the said fact and offered to hold the cotton until future orders of the court; that later, on May 20, 1933, execution was issued on the judgment obtained by the plaintiffs herein, and petitioners were informed at that time that the cotton had been released and was out of the jurisdiction of the court. The petitions further set forth that this caused petitioners loss and damage, and that the warehouse company had, in violation of its obligations, released the cotton; that this amounted to fraud on petitioners' rights, and on account of this fact, petitioners claimed the damages alleged, to wit, the

value of the five bales of cotton, together with $50 attorney's fees.

The petitions also alleged amicable demand.

Defendant denied, generally, the allegations of the petitions, and especially denied that any legal seizure had been made; that no keeper had been appointed; and it pleaded that the defendant, by virtue of operating a public bonded warehouse, issued negotiable warehouse receipts in this case; and that it was relieved from liability to the petitioners on account of having delivered the cotton in accordance with the terms of the negotiable warehouse receipts.

On these issues the case was tried below, after they were consolidated. The lower court rendered judgment in favor of the First National Bank of Arcadia and against defendant for the value of three bales of cotton; two of the five bales having been released to plaintiffs prior to the judgment.

From this judgment defendant has prosecuted this appeal.

The facts in the case, clearly borne out by the testimony, establish beyond doubt the allegations of plaintiffs' petitions, as above related, and the law applicable thereto is Act No. 221 of 1908. Although it may be true that there was no legal seizure of the cotton in the warehouse, it is admitted by defendant's manager that a copy of the judgment of court recognizing the lien and privilege of plaintiff bank, and the judgment decreeing Davis to be the owner, was shown to him by the deputy sheriff. It also admits that it forwarded to the deputy sheriff the numbers of the bales of cotton, which were used by the deputy in making his returns on the writ of sequestration. It is a clear admission that the manager of defendant company had full knowledge that there was more than one claimant to the cotton. It was then his duty to hold the cotton, as he promised to do, or to interplead all claimants. Sections 17 and 18 of Act No. 221 of 1908.

He did neither, and, relying on what defendant contends was an illegal seizure, the cotton was delivered to the claimant who had purchased the certificates from one who had stolen the cotton from one of the present claimants in this suit. In doing so, the warehouseman became liable for the value of the cotton to the right-

ful owner. Section 10 of Act No. 221 of 1908.

The act does not require that a legal seizure be made in order to hold the warehouseman for damages when it delivers to the wrongful owner. The act speaks of notice to the warehouseman, a request on the warehouseman, or whether the warehouseman has information that there are other claimants than the one who deposited the cotton in the warehouse. In either of the above-stated events, it is the duty of the warehouseman to follow sections 17 and 18 of the act above cited. It failed to do so in this case, and is liable to plaintiffs, the rightful owners of the cotton.

Defendant relies upon Act No. 239 of 1932, which amends sections 20, 40, and 47 of Act No. 221 of 1908. These sections refer entirely to those who may negotiate receipts, and when a negotiation is not impaired by fraud, mistake, or duress. There is no attempt made there to amend sections 10, 17, and 18 of the 1908 act, which deal with the duties of the warehouseman. Plaintiffs' suits are against the warehouseman and not the holder of the receipts. These sections, which are amended by Act No. 239 of 1932, might have application if there was a suit between a former owner of a receipt and the present owner, who had acquired the receipt in good faith for a valuable consideration.

The judgment of the lower court is therefore correct, and is affirmed, with costs.